Nichols, C. J.
It is conceded in this case that the written notice of the insolvency of the two debtors in question, sent by J. Koblitz & Co. to the indemnity company, neither technically nor substantially complied with the stipulations of the policy. It is not claimed that there was any express waiver of such notice. It is therefore incumbent on the insured, by competent evidence, to show knowledge by the officers of the company of the insolvency of the two debtors under consideration.
It is maintained by the indemnity company that its knowledge must have been received by one of the three officers named in the bond, namely, the president, vice president or secretary, and that information communicated to any other officer or agent of the company would be insufficient, unless further proof be tendered to the effect that the information so given was in turn communicated by its representative to the particular officer in question, thereby making it the knowledge of the company.
No proof or tender of proof was had to the effect that any written notice of insolvency other *278 than that hereinbefore specified was given to either of the three officers named, but it is contended that, acting on the notice so given, incomplete as it is claimed to be, the company took immediate steps to protect itself from liability and did all the things that any insurer similarly situated would have done had it been furnished with all possible knowledge of the insolvency.
The bond in question provided that either of these three officers might change or modify any of the provisions of the bond and waive any right of the company thereunder if made in writing over the signature of either of such officers. It further provided that knowledge on the part of or notice to any of such officers would operate to estop the company from enforcing any of the provisions of the bond and be held to be a waiver thereof.
The instant case must prevail if at all on the theory that the company, through its vice president, possessed the knowledge of the insolvency, and reliance is placed on the letter of November 25, written by Mr. Treat, such vice president, to Koblitz & Company. The acquirement of such knowledge of the situation that the company did possess is referable to the formal notices sent by the insured to the company of dates, respectively, September 26 and October 9.
The formal notices that the two debtors named were in serious financial difficulty were quite sufficient to put any person of ordinary business foresight on inquiry, and that these notices actually so operated is quite clear.
*279 The object of notice was for the one and only-purpose of permitting the insuring company to act promptly to defend its threatened liability and to take such steps possible to limit the extent of its liability. If from any source other than the insured it had full knowledge of the situation and so informed the plaintiffs in error when it attempted to follow up the defective notice with further information of the insolvency, it cannot be heard to say that since the information was not supplied by the insured in all its fullness, it must be denied indemnity, since the partial default in no degree contributed to the injury of the insuring company.
Shortly after the receipt of the notices so sent the defendant in error, formal statement was sent by it to the effect that the matter had been placed in the hands of the chief adjuster of the company, and this officer, writing as of date October 16, says that the affair had been referred to one W. S. Sheill, who would call and see them. This gentleman arrived in Cleveland soon thereafter and demanded an opportunity for a thorough and complete examination of Koblitz & Company’s books and papers for the admitted purpose of ascertaining what knowledge if any was possessed by the partnership of the failing condition of these two debtors when the bond was applied for.
It is well to notice that the representative so sent was an adjuster, not a solicitor or an inspector. The presence of an adjuster in the event of loss by fire is very good evidence that the insurance company has information of a loss for which it may be liable. So in the event of an investigation by the *280 adjuster of a life insurance company, the very presence of such official carries with it a strong intimation of knowledge on the part of that company, and in the instant case it furnishes a strong presumption that the company had acquired knowledge of all the facts as to the insolvency which it now claims should have been more fully communicated by the insured.
The insured tendered evidence, which was rejected by the court, tending to show that the arrival of the adjuster was during the period of twenty days within which the more formal notice of insolvency should, by the terms of the bond, have been sent by the insured, and that while there the question of notice was discussed, and the adjuster then stated that his company had full information of both bankruptcy proceedings and that further notice was not required.
The Treat letter of November 25, which was not admitted in evidence by the trial judge, shows to the point of conclusiveness that the indemnity company was possessed of full and complete knowledge that both the Muskingum company and the Kapner company had been forced into involuntary bankruptcy, and the presence of the adjuster in Cleveland was to obtain information calculated to assist them in defense of any claim of Koblitz & Company. This letter shows conclusively that the insuring company was already dealing with Koblitz & Company at arm’s length; its attitude was distinctly hostile. Access to the books and papers was evidently desired by the company, not, as suggested by its counsel, for the purpose of determin *281 ing whether or not the policy, which had about four months yet to run, should be cancelled, but manifestly for the purpose of showing that Koblitz & Company, at the time of the issuance of the bond, contrary to their express avowal in the application, had full knowledge of the failing circumstances of their debtors. In fact, the vice president in his letter frankly says that he desires access to those books to ascertain whether, at the time bond was applied for, Koblitz & Company had any information detrimental to the credit or responsibility of either the Kapner or Muskingum companies. If an investigation so sought would develop the fact that the insured possessed such information, it would operate to wholly defeat recovery on the bond, and it later appears that in the answer of the insuring company the possession of such knowledge is the basis of the second defense.
It is quite significant that the Treat letter was dated November 25, the very day of the expiration of the twenty-day period within which the notice of bankruptcy should, by the terms of the bond, have been given. The letter could not have been received by Koblitz & Company until the 26th, then too late to supply the defect of notice, and thereby giving color to the suggestion that the letter was opportunely timed.
It is urged by counsel for the indemnity company that since the letter could not have reached the insured until the 26th, it could not be said that reliance was placed on this letter as a waiver of the necessity of strict compliance with the terms of the contract as to notice.
*282 If this be granted, it cannot at the same time be urged successfully that the letter might not be utilized to prove full knowledge of the situation. There is really no escape from the conclusion that the letter of the vice president- contains statements from which necessarily arises an implication of full and adequate knowledge of the peril the indemnity company was facing.
The proof of waiver or the existence of knowledge on the part of the company, by the express stipulation of the bond, alike relieve Koblitz & Company from the necessity of even substantially complying with the terms of the bond as to notice.
Again, as to the examination of the books and papers, it is not to be overlooked that this inspection was sought shortly after the notices of bankruptcy, such as they were, had been received, and had reference to Koblitz & Company’s dealings with the Kapner and Muskingum companies.
The defendant in error, in explanation of this letter, suggests the thought, as hereinbefore indicated, that the inquiry was desired because it considered the transaction and circumstances that so shortly developed as being “shady,” and that it had adopted that means for the purpose of finding out whether it should continue on the bond. In the light of the fact that the company already was deeply involved, it is impossible to believe that this was the sole or even the main reason for the examination.
The indemnity company further suggests that it in this instance had taken an “unusual risk” and had exposed itself to the chance that the insured *283 might seek to recover upon claims which were known to be bad when the insurance was written.
With this characterization we can quite heartily agree, and it can be further said that since it exacted the unusual annual premium of $1,000 for insurance of $20,000, the company must be charged with the full knowledge that it was exposing itself to an unusual risk.
The premium was as unusual as the risk. To secure a bond guaranteeing relief against bad debts already contracted would be quite tempting to a business house involved with questionable debtors. The defendant company, in proposing such indemnity, really invited the very situation it now complains of in its second defense.
All insurance is a species of legal chance-taking and its field has been tremendously enlarged in modern days, but it might well be questioned if ex post facto insurance of the kind under investigation is not closely approximating the point of being opposed to an enlightened public policy.
Since we find from the letter of the 25th of November that the company had full and adequate knowledge of the bankruptcy of the debtors in question, and that by its own contract it thereby estopped itself from asserting want of notice as a defense, the judgments of both the lower courts are reversed and the cause is remanded to the court of common pleas for a new trial.
The rejected evidence relating to communications between the insured and representatives of the company other than the president, vice president and secretary, as well as with these officers, should *284 be admitted for the purpose of showing the knowledge of the company and as corroborative, of the strong implication of knowledge contained in the vice president’s letter.
These facts, together with defensive matter which the indemnity company may possess, if any, on the issue of knowledge, should be submitted to the jury for determination under proper instructions of the trial judge.
The testimony offered by the plaintiffs, both admitted and rejected, would be quite sufficient to justify the conclusion that the company possessed this knowledge in all its fullness, but since it is a plain issue of fact, the jury and not the court should settle the dispute.

Judgments reversed.

Johnson, Donahue, Wanamaker, Jones and Matthias, JJ., concur.